McCunn, J.
This is an action brought by the plaintiff against the defendant to recover the sum of $1341.18, for professional services rendered as an attorney and counsellor at law. The complaint is in the usual form, setting forth that by reason of certain retainers, on the part of the defendant, he, the plaintiff, performed certain professional services, as an attorney and counsellor at law, and that he is justly entitled to recover a fair compensation therefor. The answer does not deny the rendering of the services, nor the value thereof, but sets up as a defense a want of retainer of the plaintiff on the part of the defendant, and avers that the alleged services were performed for other parties, and when so performed were entirely worthless ; and charges the plaintiff with? a want of knowledge of his professional duties, and alleges that owing to such want of knowledge and neglect on his part, he is not entitled to recover.
On a careful examination of the case, I think there are but two questions for the court to consider :
1. Was there such a retainer, or an agreement,- on the part of the defendant as would entitle the plaintiff to recover in this form of action ? And 2. Is the charge of professional ingnorance sufficient to preclude such a recovery as claimed ?
It is a well established elementary principle of law, that the party employing an attorney or counsel to perform any service in his professional capacity, in the absence of a special agreement to the contrary, is personally responsible for any such services rendered. (Wilson v. Burr, 25 Wend. 386. 2 Shaw, 421, marginal reference. 2 Chitty’s Plead. 69, and note D. Hill v. Tucker, 1 Taunt. 7 and 5 id. 46.)
The general rule is, that the party employed looks to the employer for payment; and where a trustee employs an agent, in the execution of his trust, such agent must look to the person employing him, individually, for his payment, and can have no claim on the trust funds. (Noyes v. Blakeman, 2 Seld. 580.)
■ Whether Tallman had, or had not, in his case, authority to make an agreement with the plaintiff, is immaterial; that was *390 a question between Tallman and the heirs., and could not, in the slightest degree, affect the plaintiff's claim. Moreover, the parties for whom the defendant was acting, were minors, and non-residents of the state.
The defendant was the general agent of the property, and acted for all the heirs. That the defendant had previously been a client of the plaintiff, and employed the plaintiff to do business for the infants, and non-residents, who were irresponsible parties, without suggesting or agreeing that he should become individually responsible for the same, ór without notifying the plaintiff he would not be responsible, and this, taken together with the fact that the defendant controlled the entire .business funds and all the other concerns gf the estate, warrants me in concluding that the defendant is clearly responsible.
I find, on examining the case, that the defendant himself even agreed to pay the plaintiff out of the trust funds, when he obtained the same, and in this there is a good and valid promise when there was a strong moral obligation to pay before.
The theory, that a promise, though the party making the same may not be legally bound, can be supported by a moral obligation, is not a modern principle of law. It has long been established that where a person is morally and conscientiously bound to pay a debt, though not legally bound, a subsequent promise will give a right of action, (Lee v. Muggeridge, 5 Taunt. 46.)
I am clearly of opinion that the learned justice who tried the case, would have been justified in taking the .question of employment or. retainer entirely from the jury, and directing a verdict for the plaintiff for the amount claimed.
He, however, left the question to the jury as to whether Mr. Tallman employed the plaintiff individually or not, and whether ’ he agreed to pay for such services ; and inasmuch as the jury found only such a verdict as the court should have directed, the defendant has sustained no injury by the ruling of the court. There was no conflict of testimony as to the fact that the defendant personally employed the plaintiff without any lawful authority to fyind any one but himself, and there being no dispute about *391 the rendering of the services, or the value of the same, this disposes of the first proposition.
The remaining question to he disposed of is, “ whether the plaintiff was right in advising the proceedings first undertaken, to sell the property, under the statute, or if not right in that respect, whether he was so far wrong in such advice as to preclude him from recovering in this case.
“ It has been suggested that however clear the power of a court of general equity jurisdiction would be under the circumstances disclosed in this case, to sell the property in question, yet the proceedings, which were resorted to, were not in an action, were solely authorized by statute, and that such statutory provisions must be strictly followed, or the sale will be void."
As to this I concur; moreover, I hold that the authority must be found in the statute, but I think the statutory provisions as applied to the case are clear and ample.
It is conceded by all that the statute was intended to furnish a cheap and prompt mode of selling infants’ estates where such sale is necessary. If the statute did not apply, it failed of its object, in a case, calling most pressingly _for its action.
But the statute did not fail. The statute expressly provides for selling interests of all infants who were seised. All the infants who were seised applied for the sale, and I think the courf, to whom the application was made, was bound to sell without hesitating upon the objection, that if they did not sell, other 'interests might hereafter spring into existence. This was an additional reason for prompt action, in order that a just, necessary and beneficial sale might not be delayed or prevented.-
The infants before the court (in connection with owners of life estates) held and owned for the time being the whole estate, and that was sufficient under the statute to authorize the sale. The interests of the infants involved in this case were not extraordinary or uncommon.
The will under which the estate was devised contained no extraordinary provision, and none, whatever, which was violated in the sale. Such cases seem to have been expressly contemplated by the legislature, when they provided for the preserva *392 tion of the proceeds of the sale as “ real estate ” to which the interests of unborn children will attach, and not to the real estate sold. Public policy forbids any other course in such a case. Supposing the theory to be correct that this property could not be sold for the purpose of paying this assessment, the entire estate would have been in jeopardy, perhaps lost to all the parties concerned. Moreover, the necessity of such a sale in this case has not been disputed.
It has not been argued, nor does it appear that there is any substantial difference between an application for sale under the statute and a partition sale, and the court in the case of Mead v. Mitchell, (17 N. Y. Rep. 216,) expressed the opinion that a sale in partition binds after born children, on principles of equity independent of the statute. (Cheesman v. Thorne, 1 Edw. C. R. 630. Wills v. Slade, 6 Vesey, 498. Baker v. Lorrillard, 4 Comst. 257.)
If the interests of children in existence attach to the fund in court as real estate, most certainly can the vague interest of' unborn children attach to the fund in court as real estate.
I hold, that a sale of the estate under the statute would have been a sale of the whole interest, entirely freed from the danger of any interest thereafter, and which would follow the estate where it lawfully had gone, that is to the fund in court, as real estate to be preserved for just such contingencies. (7 Paige, 185.) It would be absurd to think that a property of this kind could be liable to extinguishment by this assessment, when we have the parties in court who held the whole estate, and could not dispose of any portion of the property for the purpose of preserving the rights of all interested.
If the contrary was the rule, how long then must this estate continue to be inalienable ? Infants unborn are not seised; hence courts cannot sell their interests, because such interests do not exist; they can sell only interests existing. If a child should be born, it will be vested with the interest in the share substituted for real estate and held by its co-heirs. The whole interest must exist somewhere, and this being the rule, it is of course subjected to legal control, and the reason why the inter *393 est of an unborn child cannot be sold, or why it cannot have a guardian appointed, is because there is no such interest in existence.
I repeat, however, that if such unborn infant have such an interest as an infant in existence, not only are they identical, but they demand the interposition of the court, especially in such a case as this, where, without such interposition, the interests of all must perish.
The counsel objecting to the title on'the sale of the property under the statute, show no reasonable grounds for such objections, and the law deems every one satisfied, when he shows no such reasonable grounds. (Baker v. Jones, 2 Car. & P. 743. Perkins v. Wash. Ins. Co., 4 Cowen, 645.)
The opinion of the learned judge at Supreme Court, special term, touching some of the points in the case, does not in the slightest degree impair my belief, that the court of last resort would have compelled the purchasers to receive the property under the order of sale, made by the court; nor does it shake my opinion; that a sale under such an order was proper, and sustained by law, and I think the Supreme Court, at general term, must have considered the interests involved of but little importance, from the fact that I find the questions were passed upon by the learned judges of that bench without a single expression of opinion from any of them.
Notwithstanding the decision of the Supreme Court, I am still fully of opinion that the advice given by the plaintiff to the defendant was proper, and that the learned justice who tried the case below was justified in holding that the plaintiff was right in the course which he pursued, or at least that he was not so far wrong that he should be deprived of a fair compensation for his services.
The judgment below should be affirmed with costs.
Barbour, J. concurred,
wwo
Robertson, Ch. J. The answer in this case sets forth at length the proceedings taken by the plaintiff for the sale of *394 certain real estate devised by the father of the defendant, the decisions of the Supreme Court against the sufficiency of one, the abandonment of another, and the success of a third. It also makes a separate submission of certain questions apparently as matters of law, one of which is, that “the plaintiff is not entitled to recover for services in the nugatory and useless proceedings set forth in the complaint,” which are the same as those set forth in the answer. It does not contain any allegation that the worthlessness of such proceedings was caused by any incompetence, ignorance or neglect on the plaintiff’s part, or that he might, with due diligence, have ascertained that the advice given by him on which such proceedings were taken was erroneous, or that the contrary advice would have been free from any reasonable doubt by any prudent and skillful member of his p'rofession. The main defense on the trial was, as alleged on the motion for a dismissal of the complaint, pursuing the theory of the answer that the services of the plaintiff were “worthless,” and in the requests to charge the jury “ worthless to accomplish the purpose intended to be effected by them.” What such purpose was, was not stated.
The point of law intended to be thus presented by the answer, motion to dismiss the complaint, and request to charge, was simply that because the statutory proceeding taken by the plaintiff was in law ineffectual to accomplish the purpose for which he was alleged to have been retained to take them, or were made so by the decisions of the Supreme Court, at special and general terms, in such proceeding the plaintiff is not entitled to recover. The principle of professional incompetency and negligence carried to that length I think cannot be sustained. There is no implied agreement in the relation of counsel and client, or in the employment of the former by the latter, that the former will guaranty the success of his proceedings in a suit, or the soundness of his opinions, or that they will be ultimately sustained by a court of last resort. (Lanphier v. Phipos, 8 Car. & P. 475.) He only undertakes to avoid errors which no member of his profession of ordinary *395 prudence, diligence and skill would commit. (Moutrion v. Jeffreys, Ry. & Moo. 317. S. C. 2 Car. & P. 113.) It is not enough that doubts may be raised of the soundness of his opinion or correctness of his course, unless they are accompanied by the absence of all reasonable doubts of the propriety of an opposite course or opinion in the mind of every member of his profession of ordinary skill, sagacity and prudence, caused by a decisiveness of reason and authority in its favor. (Kemp v. Bent, 4 Barn. & Ad. 424.) The practice of the law, in reference to the right of compensation for professional exertions, although dependent on the exercise of intellect and study, as its instruments, is subject to the same rules as any other employment, even where the implements are of a more material kind, and not to any of either greater or less stringency. On the one hand, practitioners are bound to possess the skill and exercise the diligence and attention common to prudent members of their profession; and, on the other, they are released from all liability for consequences, which, considering the fallibility of human reason, must necessarily be sometimes unforseen. They are only chargeable with utter incompetence or want of ordinary care in aparticular case. Therefore, when after using proper diligence, no member of the profession, of ordinary skill and capacity, could entertain a reasonable doubt of the propriety of a contrary view and conduct, if the facts are undisputed, the court can determine, as matter of law, whether, in view of authorities attainable by proper research, any doubt in regard to the law is reasonable. These views are rather sustained than opposed by cases in which attorneys have been denied compensation for services even in an action or proceeding properly begun, but rendered worthless by the mode of conducting them. (Moutrion v. Jeffreys, ubi sup. Hill v. Featherstonhaugh, 7 Bing. 769. Duncan v. Blundell, 3 Stark. 6. Hopping v. Quin, 12 Wend. 517.)
The learned judge before whom the action was tried instructed the jury that the correctness of the course of the plaintiff was a question of law, and informed them that he had already in the course of the trial held that the plaintiff was not *396 so far wrong as not to be entitled to compensation for the services performed, to which an exception was taken. He also refused to charge, as requested, that the plaintiff’s proceedings were worthless to accomplish the desired purpose, whatever it was, or that the decision of the Supreme Court must be taken as establishing such worthlessness. In such instructions and charge, I think he was correct, both because it is not such mere worthlessness which as a fact is exclusively of services alone, but the ignorance, incompetence, and inattention on which it is founded, which should deprive a party, employed to render them, of all compensation, and because there was no direct allegation in the answer of such worthlessness as a fact, but only an argumentative one, founded on the failure and abandonment of the proceedings and the adverse decision of the Supreme Court, both of which fail, - in my view, to establish it as matter of law, which could deprive the plaintiff of compensation.
I have not the slightest doubt of the correctness of such decisions of the Supreme Court, if they are necessarily open for examination in this case. The clear language and sole purpose of the statute, fortified by the two decisions of Baker v. Lorillard (4 Comst. 257,) and Forman v. Marsh (11 N. Y. Rep. 548,) seem to me to set the question at rest. In the former case, J ustice Bronson, in delivering his opinion, expresses certain views consisting of three propositions, in which he says the majority of the court concur; although upon the second one, which was that the contingent interests of certain unborn infants were not bound by a sale under the statute in question, (2 R. S. 194,) he states that some did not “ choose to express opinion but nothing is said indicating that even upon that point a majority did not concur. Justice Harris, in the same case, adverting to the fact that the first taker took a vested estate which would open to let in after born children, suggested the idea, which, on examination, will be found to be unsupported, that the first taker thereby beeame a trustee for those in remainder, and reied upon the 180th section of the statute, (2 R. S. 195,) as seeming to look “ to a state of things where the whole title *397 might be vested in the infant, and yet some other person might have some contingent or beneficial interest in it.” He certainly did not mean to assume that without the statute the first takers had such a legal estate as trustees, that they could sell and bind the contingent remainders ; nor that the law invested those who were not competent to take care of their own interests, and were incapacitated to sell their own estate, by mere force of coming into court to seek its protection and aid in order to procure a sale'of their own interests and property to supply their own wants, or promote their own interests, with the guardianship of the contingent interests of others, which could only take effect by taking away part of their estate, and whose interests and necessities might be diametrically opposed to theirs. Such a doctrine would" break down all the well settled distinctions between legal limitations and equitable interests. He was evidently misled by a hasty or incorrect view of the 180th section. The object of that section was held by Justice Edwards, in delivering the opinion of the court in Forman v. Marsh, (ubi sup.) to be “ to deprive the (special) guardian of power, either to affect the rights of representatives of infants, or give them a power of testamentary disposition not before possessed,” he declaring in the most emphatic manner “ that such were the only reasons which had been or could be suggested for its introduction.” It is true that Justice Buggies in the last case, overlooking the peculiar force of the exceptive particle “ but,” as used in such section, considered it as divided into two branches, of which he considered only the second to be intended to preserve the character of real estate for the land, and the first as “ intended to protect the interests of those who might have future estates vested or contingent interests in the land.” Against whom or what, it is to be regretted that he omitted to state. The 180th section was an amendment passed in 1815, (Laws of 1815, p. 104, §§ 5, 6,) of the original act passed in 1814, (Laws of 1814, p. 116, ch. 108,) at the same session with the special act which originally suggested the propriety and necessityof its passage. (Clarke v. Van Surlay, 15 Wend. 443.) If the original act did not authorize a sale which *398 would' defeat future contingent interests, there was no necessity for introducing any restriction in such amendment; and certainly the latter, whatever it might look to, did not purport to confer any new authority. The legislature could hardly he chargeable with the absurdity of imposing a restriction on the right of testamentary disposition of the property by the infant petitioners, and at'the same time giving them power to dispose of the interests of others in one and the same section. The exceptive particle “ but,” makes the whole section read as merely depriving the infant applicants of any “ greater estate or interest in the proceeds ” than “ one of the same nature with that which they had in the property ” sold.
A very cursory examination of the statute itself will suffice to show that there is not another expression in it which looks to the sale of any other interest hut that of the petitioning infants, who are the only applicants and parties to the proceedings. Its first section (§ 170) defines the persons who are' to apply as infants seised of real estate; the object to be attained is a sale or other disposition of their property, the mode of application by petition, by a next friend or guardian* implying living persons, and the kind of disposition is submitted to the discretion of the court. The person whom the court appoints to make such disposition is made special guardian not of the proceedings, but such infants, (that is, the petitioners,) to whom he is to give a bond for the performance of his duties. (§§ 171 to 174, inclusive.) A reference, which is then ordered, is a summary inquiry, not into the propriety of a sale, but “merits of the application.” (Id.) The considerations by which the court is to be governed in directing any disposition of the estate are-there prescribed. (§175.) Those are either the necessities of the infant petitioners in reference to their support and education, or else their interests in reference either to the exposure of the premises in question to waste and dilapidation, or their unproductiveness, or other “peculiar” reasons or circumstances, (§ 175,) and the court is not authorized to sanction any disposition, except such as is required to-meet the exact Case. A mortgage or a- lease is authorized *399 equally with a sale, if answering the desired purpose. In such a case, the court clearly is not to act as a court cutting off contingent remainder men, as by a fine and recovery, which may not be necessary, and clearly would be improper, in order to benefit the first takers, (Cochran v. Van Surlay, 20 Wend. 375, per Walworth, Ch.) but as the representative of the legislature as parens patriae, (Id. p. 373,) as in the precisely analogous proceedings, where infants or others non sui juris hold estates in joint tenancy or in common, (2 R. 8. 330, §§ 86 to 91,) except that their exposure to the expense of a partition suit is made a sufficient necessity. The court is not authorized to inquire into or required to protect the interests of contingent remainder men in the disposition it may make. After the disposition ordered is made by the guardian, the infant applicants alone are máde expressly wards of the court. Any surplus to be invested is to be for their benefit alone. (§§ 178, 179.) And, finally, no greater effect is given to the conveyance by the special guardian than to one executed by the petitioning infants.when they had attained their majority. Even the prohibition of a disposition of the premises contrary to the provisions of the instrument by which the title was acquired, refers to such acquisition by the infant petitioners alone. The statute Speaks throughout only of the “ estate ” of the infant applicants and their “ property,” and says nothing of land, except in regard to leases or of the title to or fee of it. Even the restriction of the 180th section is only upon infants whose “ real estate,” is sold. If the statute gives authority to pass the estates of contingent remainder men, it makes no distinction between the living and the unborn infants and persons of full age. The living contingent remainder man would b.e as much cut off by such a sale as unborn infants. Besides, where are such contingent unborn remainder men to look for protection to their interests ? The special guardian’s bond is not to them ; he is not the protector of their rights ; the first takers are entitled to receive the proceeds of the disposition on coming of age, since the court cannot determine what proportion to keep back, and if the contingent remainder men are not then born, they have nothing *400 afterwards to look to but the responsibility of those who have received such proceeds. Such a proceeding, in case the interests of contingent remainder men are cut off under a sale pursuant to the statute, would, clearly be taking the property of one to benefit another. There is a wide distinction between such a proceeding for the benefit of a living first taker without regard to- other interests, and the representation by the first taker of all future contingent remainders, where their common interest is assailed or required to be protected. (Story’s Eq. Pl. §§ 144-147, 159.) In partition suits, the rights of copartners, joint tenants, or tenants in common, to sever their interests, is the sole ground of such representation, (Wells v. Slade, 6 Ves. 498,) and a sale is only authorized when a partition is impracticable, and the court may protect the intersts of those represented, by retaining the whole share. The whole question in such proceeding is not one of right, but of expediency. It has none of the characteristics' of such fictitious actions as “ fines and recoveries,” invented to unshackle lands from intricate impediments to alienation. Indeed, the plaintiff himself seems to have perceived the distinction just noted, when he speaks in his testimony of “ the statutory proceeding not being in the nature of an adverse suit.”
I have in the preceding considerations assumed what seems to have been heretofore assumed by every one who has had any thing to do with the proceedings set out in the complaint, and as is alleged in the answer, not only that the infant petitioner who had survived her mother had a vested interest in the land, but also the others, whose mothers were living ; but I can find no warrant for it in the eighth clause of the will of the grandfather of such infants (Wm. Tallman, Jr.) which is the only part before us. It contains a reference, to a previous and subsequent “ bequest," the former to his wife, and the latter to three of his daughters, whose names are not given ; but we are not informed of the nature or terms of either. It first “ gives, devises and bequeaths ” a residue of personal estate, the premises in question and other lands, subject to the prior bequest to his wife, and the payment of such subsequent one *401 to the three daughters. It then proceeds as follows : “ All which bequests aire given to them during their natural lives, in equal portions, share and share alike, and after their decease, to their children, the child or children of each to take the share of their mother; ” but concludes by saying: “ And in case any of my said daughters should die without lawful issue, then * * the portion devised and bequeathed to such daughter shall be divided between the remainder of my children in equal portions, share and share alike.” I am unable to perceive how such clause creates a remainder in any grandchild, if its mother should leave descendants, but no children surviving her. To effect such a construction, considerable violence must be done to its language, while words of established different significations used in juxtaposition must be presumed to have been employed to mean the same thing. Thus, for such purpose, not only must the word “ bequests,” when referring to some gift of the testator in which a remainder to children is created, be so far wrested from its legitimate meaning as to include devises, but, in order to be applied to any devise in the will, the employment of the same word in its ordinary sense immediately precedingly to which its accompanying relative pronoun grammatically refers, must be disregarded and overleaped without the slightest necessity or justification. So, too, as the statutory definition of the phrase “ dying without issue ” is dying without heirs or descendants of the first taker surviving him, (1 R. S. 724, § 22,) the remainder over to all the testator’s children could not, therefore, take effect ; if there should be descendants of any of his daughters living at the time of their death, although their children might all be dead; yet the remainder in the “ bequests ” spoken of was given to children only, and not to issue or descendants. So that if such remainder over were to take effect on the same subject as the first remainder, both provisions would fail, if there were descendants but not children of the first takers living at the time of their death. No different result can be obtained, except by construing “children” to mean “ issue,” which is plainly forbidden both by the mean *402 ing of the word, the contrast in its use and the insertion of the words “their mothers.”
If the bequests to the wife and the daughters of the testator, and the remainder to grandchildren, be laid out of view, and the last sentence left to operate as a conditional limitation over on the first devise and bequest only, the meaning is clear. Such devise would create a fee in the four daughters named, (1 R. S. 748, § 1,) subject to be cut down' to a life estate in case of leaving no descendants, (1 R. S. 724, § 22,) surviving them, and their interest would then fall back into the testator’s estate, to be redivided by the same clause absolutely among his other children. While the special bequest would remain a legacy to three daughters for life, with remainders to their children, alone opening to let in any afterwards born. The change of the term “ share,” if applicable only to an interest in a collateral legacy to three daughters, to “ portion,” as applied to the interests given to four in the bulk of the testator’s property, as well as the contrast of the whole language of the gifts of the two remainders, is very significant. This construction seems to me so consistent with rules of grammar, and so natural and obvious, that I am somewhat astonished that in the legal proceedings in regard to such premises it should have been overlooked, if not knowingly disregarded, for other purposes. As the other construction, which was actually applied, only took from the mothers to give to the children, it was, perhaps, not material that it should have been adopted without much inquiry.
But, as regards the value of the plaintiff’s services, such construction is material, because a conveyance by the testator’s daughters and the defendant, with one by the special guardian of the infant petitioner, who had survived her mother, and thus inherited the interest devised to her, would carry a complete indefeasible title to the whole estate of the testator in such land. The special proceeding was then of use, and even indispensable. And although the plaintiff may have failed to present the proper views to the Supreme Court, in his argument before it, for any cause whatever, that would only affect *403 his right to compensation for such argument, but not for the steps taken in the proceeding.
Independently, however, of the questions of the construction of the statute or will in question, the plaintiff's proceedings would not in any event have proved entirely unprofitable ; the estate of the other infant petitioners, whatever it was, might have been sold as well as that of the petitioner who had survived her mother. Neither the order of the court, nor the contract of the special guardian, is before us. We cannot, therefore, determine whether the latter contracted to convey more than he had authority to dispose of. At all events, a good sale might possibly have been made, and the assessment paid, which was threatening to swallow up tho whole value. The defendant does not appear, even by his own statement to have relied upon any express assurance by the plaintiff that a statutory proceeding would carry the whole title in the land to a purchaser. The court might have thought proper to order only a mortgage to raise enough to pay off the assessment. According to the statements of both parties, cheapness, expedition, and the union of all parties seem to have entered into the resolution to take the proceeding under the statute. The defendant continued to retain the plaintiff to act for him after the refusal by the first purchaser to take, and even after the decision by the Supreme Court, at both special and general terms, and employed him to carry through the final successful action in partition. He was only surprised at the amount of the bill, offered a less amount, and was willing to pay it if he could out of the estate. All this .is hardly consistent with the supposition, that the plaintiffdtad not done what he undertook to do, or had given assurances that were not borne out by the decision of the court, and the abandonment of two sales in succession, op the ground of a defect in the proceeding. There cannot, therefore, well be said to have heen such conclusive evidence of the worthlessness of the proceeding to accomplish every object desired as to require the court to have given the positive instruction asked for on that point. The proceeding may have been an *404 experiment. There is no question before us as to the amount due, if any thing is Rue.
Another defense set up in the answer was, that the defendant had no title nor interest in the real estate in question, and in retaining the defendant acted solely as agent of the owners, and so notified the plaintiff, and it was understood that the latter should be compensated for his services out of the pro-' ceeds of the sale of such estate. On the trial, the learned judge before whom the same was tried instructed the jury, in substance, that if they found from the evidence that the defendant “employed” the plaintiff to render the services for which the action was brought, and agreed to pay him therefor, he was entitled to a verdict for his claim. To which an exception was taken. After the interruption of such exception, the judge proceeded to explain such instruction by a direction to the jury that in determining such question of employment they must believe that the defendant “intended to make himself personally liable,” and that he would not be so liable without an express contract to pay, either if the plaintiff “ knew that he was acting for others in a matter in which he had no interest,” or “ if he did not intend to make himself personally liable, and the plaintiff so understood it.” No exception was taken to instruction as thus qualified. It is to be presumed the defendant’s counsel was satisfied therewith, as being a compliance with his second request to charge, having taken no exception to the refusal of such request. The only proposition involved ip such a request was, that the defendant was not liable unless he either “ made an agreement with the plaintiff (to become personally liable) or intended to make him (the plaintiff) believe, and he did believe and understand, that he (the defendant) would be personally liable.”
The instruction as given, with its qualifications, substantially embraced the proposition so requested to be put to the jury ; at all events, it was correct, for undoubtedly an express promise to pay by the defendant would bind him, even although the plaintiff knew him to be acting for others, and that he only intended to bind them • and if the defendant, with intent to *405 make himself personally liable, the plaintiff understanding such to be his intent, employed the latter, and agreed to pay him for the services to be rendered, he is clearly liable. “ Employment,” (Monell v. Marshall, 25 How. 425,) and “ retainer,” seem to imply a personal obligation. (Hill v. Tucker, 1 Taunt. 9, per Mansfield, Ch. J. Wilson v. Barr, 25 Wend. 386.) If the defendant was acting as a trustee and not as an agent, he was responsible in the first place, at all events, as principal. (Noyes v. Blakeman, 2 Seld. 580.) Indeed, in regard to attorneys, the presumption as to the person to whom the credit is held to be given seems to be reversed. (2 Chit. Pl. 69, n. d. 2 Show. R. 422. Wilson v. Burr, ubi sup. Hill v. Tucker, ubi sup.) Under the charge, the jury must be presumed to have found either that there was an express contract made by the defendant to pay, or an agreement by him to pay, intending to make himself personally liable, and giving the plaintiff to understand he so intended. And the portion of the plaintiff’s testimony alluded to in the charge was sufficient to sustain it.
No question of fact was raised in this case by proof by experts of the views which members of the plaintiff’s profession would entertain of the correctness of his opinion, if given, that the statute gave the court jurisdiction to order a sale of the contingent interests of others not applicants under it, as well as those of such applicants, or, in other words, bind them by the disposition made.
Not being able to find, therefore, any errors in the charge of the learned judge, or his refusals to charge, which seems to be the principal subject of exception, or the reception or rejection of evidence, I concur in affirming the judgment.
Judgment affirmed.